UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------X

VICENTE A. GUTIERREZ,

                    Plaintiff,

                                                    15 Civ. 3181 (RWS)

        - against -

                                                        OPINION

CAROLYN W. COLVIN, ACTING COMMISSIONER
OF SOCIAL SECURITY,

                    Defendant.
----------------------------------------X

A P P E A R A N C E S:

```
                    USDC SDNY
                    DOCUMENT
                    ELECTRONICALLY FILED
                    DOC #: _____
                    DATE FILED: 7/7/16
```

                Counsel for Plaintiff

        CHRISTOPHER J. BOWES, ESQ.
        54 Cobblestone Dr.
        Shoreham, NY 11786

                Counsel for Defendant

        SOCIAL SECURITY ADMINISTRATION,
        OFFICE OF THE GENERAL COUNSEL
        26 Federal Plaza, Room 3904
        New York, NY 10278
        By:  Sergei Aden, Esq.

**Sweet, D.J.**

Commissioner of Social Security Carolyn W. Colvin (the "Commissioner" or "Defendant") has moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) dismissing the complaint of Plaintiff Vicente A. Gutierrez (the "Plaintiff" or "Gutierrez"), which seeks to reverse the decision of the Commissioner that Plaintiff was not entitled to Social Security Disability ("SSD") and Supplementary Security Income ("SSI") disability benefits. Plaintiff has cross-moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). As set forth below, the Commissioner's motion is denied, the Plaintiff's cross-motion is granted, and the case is remanded to the Social Security Agency for factual determination.

## I.   Prior Proceedings

On May 18, 2012, Plaintiff filed applications for SSD and disability insurance benefits ("DIB"). Transcript of Administrative Record at 245-60 ("Tr."). On July 30, 2012 the Social Security Administration ("SSA") denied the applications. Id. at 156. Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ"). Id. at 95. A hearing was held

2

before ALJ Eric Borda on December 10, 2013. Id. ALJ Borda considered the case *de novo* and concluded that Plaintiff had not been under a disability within the meaning of the Act from the date of his claimed onset through the date of the decision. Id. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on April 6, 2015. Id. at 1.  Plaintiff commenced this action on April 20, 2015 to vacate the Commissioner's decision.

Oral argument on the instant motions was held on March 24, 2016, at which time the motions were deemed fully submitted.

## II.  Administrative Record

Plaintiff's medical record is extensive. The following facts, drawn from the administrative record and filings, provide a very brief summary of the record of Plaintiff's visits to Lincoln Medical and Mental Health Center between December 27, 2011 and November 2013. They are not in material dispute.

Gutierrez was born in 1961. He obtained a GED and soldering training, and from 1987 through November 4, 2011, he worked as a fabric cutter eight hours a day, five days a week. He reported that the job was physical, including lifting and carrying 50

3

pounds or more frequently, and up to 100 pounds or more. He

stopped working on November 4, 2011, testifying later that he

did not feel well enough to work.

On December 27, 2011, Gutierrez first sought treatment at

Lincoln Medical and Mental Health Center ("Lincoln") for

abdominal pain which he reported had been present for years

though had worsened in the three or four days prior. He reported

a history of hepatitis C, as well as use of alcohol and cocaine.

The examination returned normal, and Plaintiff was referred in

February 2012 for primary care treatment related to his

hepatitis C. In June 2012, he began interferon treatment of

Pegasys and Ribavarin. The side effects returned him to the

emergency room with flu like symptoms and headaches. He

initially discontinued the interferon treatment, but the

treatment was restarted. Thereafter, the flu-like symptoms

receded, though the headaches continued.

In February 2012, Gutierrez reported to Lincoln that he

desired to stop using drugs. In March 2012, Gutierrez returned

for substance abuse treatment, reporting a mildly depressed

mood, mild emotionality, severe fatigue and low energy, and mild

sleep disturbance. His activity level was described as

"completely independent" and referred for treatment.

Gutierrez returned to various clinics and offices at Lincoln multiple times per month (and often multiple times per week) for treatment relating to his hepatitis C, substance abuse, depression, impotence, allergies, and related symptoms. He stopped his previous daily use of alcohol and cocaine in approximately March 2012, having been advised that he could not use either while receiving the interferon treatment for his hepatitis C. The interferon treatment was discontinued on August 24, 2012 due to ischemic cotton wool spots on his retina. A March 12, 2013 ultrasound reveals symptoms consistent with cirrhosis. A June 17, 2013 EDG revealed trace varices, an otherwise asymptomatic dilation of blood vessels creating an elevated risk of rupture.

Plaintiff also received ongoing treatment for depression, including several evaluations, pharmaceutical intervention, and individual and group therapy. The hepatitis C was monitored after the discontinuation of treatment. Throughout, Gutierrez's reported symptoms, diagnoses, and test results remained relatively consistent: moderately active hepatitis C, headaches, impotence, depressed mood accompanied by fatigue, lack of sleep, sadness, feelings of guilt, nausea and lack of appetite. The hepatitis C diagnosis worsened other aspects of Plaintiff's

medical conditions, including his mood and allergies.
Nevertheless, Gutierrez was repeatedly evaluated as being able
to function on a daily basis, without difficulty communicating,
maintaining concentration, and learning and performing tasks
until June 2013, when Dr. Valeron noted Gutierrez had
difficulties functioning independently, communicating clearly,
engaging socially, and holding a job. At times, Gutierrez would
report slight improvements or feelings of hope regarding
treatment or the prospect of employment. Other times, he would
report feelings of hopelessness and overwhelming guilt, and an
inability to pursue gainful employment. His social engagement
was similarly inconsistent, sometimes reporting isolating
himself and other times reporting engaging in weekly church
activities and going out.

In late September or early October 2013, Gutierrez fell.
Three weeks later, he reported to Lincoln with lumbar spine
pain. An X-ray revealed no fractures, but he continued to report
pain. In November 2013, Gutierrez was diagnosed with chronic
hepatitis C, and Dr. Akinola Fisher attested to complications
resulting from cirrhosis of the liver. Dr. Fisher noted
Gutierrez was not able to pursue gainful employment. His other
conditions remained more or less static: depressive disorder,
poly substance abuse in sustained full remission, hepatitis C

6

with liver cirrhosis and related blood issues, headaches, lower
back pain. In November 2014, Gutierrez again underwent treatment
for hepatitis C with Sofobivir and Ribavarin. Treatment for his
lower back pain in September 2014 by Dr. Ruth Osowsky noted his
ongoing conditions and indicated in a review of functional
capacity that Gutierrez would be unable to work for at least
twelve months. The following month, Dr. Maneliz Alonso advised
that Gutierrez was employable with work limitations. A
conflicting but undated review by Dr. Alonso declines to make a
determination with respect to Gutierrez's ability to work due to
lack of sufficient information. Plaintiff's liver condition,
hepatitis C, fatigue, blood issues, headaches, insomnia,
depression and low back pain continued to be treated through
late 2014.

## III.  **Applicable Standards**

### a. **Review of the Commissioner's Decision**

In reviewing the Commissioner's decision on an issue of
disability insurance benefits, a district court must determine
whether the decision is supported by substantial evidence. See
42 U.S.C. § 405(g); Brown v. Apfel, 174 F.3d 59, 61-62 (2d Cir.
1999). Substantial evidence is "more than a mere scintilla."

7

Richardson v. Perales, 402 U.S. 389, 401 (1971). Rather, it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Brown, 174 F.3d at 62-63. "[T]o determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." Id. at 62 (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)).

Substantial evidence "is still a very deferential standard of review – even more so than the 'clearly erroneous' standard." Brault v. Commissioner, 683 F.3d 443, 448 (2d Cir. 2012). Under this standard, once an ALJ finds facts, a court can reject those facts "only if a reasonable factfinder would *have to* conclude otherwise." Id. (quoting Warren v. Shalala, 29 F.3d 1287, 1290 (8th Cir. 1994) (emphasis in the original)).

A court reviewing a denial of Social Security benefits does not review de novo the evidence in the record. Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996); Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991). If the Commissioner's decision that a claimant is not disabled is supported by substantial evidence

in the record, the court must uphold the decision. See 42 U.S.C. § 405(g); Jones, 949 F.2d at 59.

### b. Standard of Disability

In order to establish a disability within the meaning of the Act, a claimant must demonstrate the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d) (1)(A). Under the Act, it is not sufficient that the claimant establish the mere presence of a disease or impairment. Rather, he must show that the disease or impairment has caused functional limitations that preclude him from engaging in any substantial gainful activity. Rivera v. Harris, 623 F.2d 212, 215-16 (2d Cir.1980); Coleman v. Shalala, 895 F.Supp. 50, 53 (S.D.N.Y.1995).

Congress has established the type of evidence necessary to prove the existence of a disabling impairment by defining a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and

9

laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The statute further provides that an individual will be determined to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

To determine disability, the Commissioner uses a five-step sequential evaluation process. 20 C.F.R. § 404.1520. If a finding of disability or non-disability can be made at any point in the sequential analysis, the Commissioner will not review the claim further. 20 C.F.R. § 404.1520(a); Williams v. Apfel, 204 F.3d 48, 48-49 (2d Cir.1999).

At step one, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If the claimant is not engaged in substantial gainful activity, the analysis moves to step two where the Commissioner considers whether the claimant has a "severe" impairment or combination of impairments that significantly limit his physical or mental ability to do basic

10

work activities. 20 C.F.R. §§ 404.1520(c), 404.1521; Bowen v.
Yuckert, 482 U.S. 137 (1987).

If a severe impairment or combination of impairments is
present, at step three the Commissioner considers whether the
claimant's impairment meets or equals the criteria in Appendix 1
to 20 C.F.R. Part 404, Subpart P. See 20 C.F.R. § 404.1520(d).
If the claimant does not have a listed impairment, the
Commissioner will make a finding regarding the claimant's
residual functional capacity, i.e., what a claimant can do
despite his impairments and related symptoms. 20 C.F.R. §§
404.1520(e), 404.1545.

The Commissioner then uses the residual functional capacity
finding at the fourth and fifth steps of the sequential
evaluation. Id. At the fourth step, the Commissioner determines
whether the claimant has the residual functional capacity to
perform his past relevant work. 20 C.F.R. § 404.1520(f). The
claimant bears the burden of proving that he cannot return to
his former type of work. See Melville v. Apfel, 198 F.3d 45, 51
(2d Cir.1999). If the claimant is unable to perform any work he
has done in the past, the Commissioner considers his residual
functional capacity along with his age, education, and past work
experience to determine if he can do other substantial gainful

11

activity in the national economy. 20 C.F.R. § 404.1520(g). If a claimant can do other work, the claim will be denied. Id.

**IV.   The Commissioner's Determination Was Not Supported by Substantial Evidence and is Remanded**

In performing the sequential evaluation of Plaintiff's disability, the ALJ concluded:

(1) Plaintiff was not engaged in substantial gainful activity as of the alleged onset date of November 4, 2011. Tr. at 97.

(2) Plaintiff has severe impairments imposing significant limitations on Plaintiff's ability to perform basic work activities, and had lasted or were expected to last for a continuous period of twelve months. Specifically, hepatitis C, major depressive disorder, and polysubstance abuse in remission. Id.

(3) These impairments do not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. at 97-99.

(4) Plaintiff has the residual functional capacity to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), limited to simple and routine tasks, allowing him off task 5% of the workday, without fixed production quotas, without hazardous conditions, involving only occasional

12

decision making, occasional changes in work setting,
occasional interaction with others, and occasional over the
shoulder supervision. Id. at 99-102.

(5) Plaintiff is unable to perform past relevant work. Id. at
102.


Plaintiff contests the fourth finding as to his residual
functional capacity. He argues that the ALJ's conclusion was
"improperly determine [sic], without any basis, that Mr.
Gutierrez's fatigue would not preclude medium work." Pl.'s Mem.
of Law at 17 ("Pl.'s Br."). Plaintiff concedes that the ALJ
"agreed that Mr. Gutierrez experienced fatigue as a result of
his liver disease," id., but nevertheless argues that the ALJ's
conclusion regarding residual functional capacity at a medium-
work capability level was unsupported.


With respect to fatigue resulting from Plaintiff's mental
health conditions, ALJ Borda gave "great weight" to Dr. Broska's
assessment that "claimant's psychiatric and substance abuse
problems do not appear to be significant enough to interfere
with the claimant's ability to function on a daily basis." Tr.
at 101. The ALJ gave "some weight" to Dr. Valeron's opinion
"claimant has marked limitations in his ability to do work-
related activities on a regular and continuous basis." Id. The

13

ALJ did not give it more weight on the basis that "it is
inconsistent with the evidence in that it finds marked
limitations in functioning. Treatment records demonstrate that
the claimant is doing better on medication and his mental status
examinations have been largely normal." Id. This conclusion is
not cogently supported, as Borda recites that Valeron's
assessment "noted that the claimant had no side effects from his
medication," and Valeron's assessment was, in itself, a form of
mental status examination. Id.

ALJ Borda based his conclusion as to Plaintiff's residual
functional capacity meeting the level of medium work primarily
on disbelief of Plaintiff's claims. Borda determined:

> The claimant's allegations are only partially credible. He
> states that he has an inability to work, however he attends
> an adult day care program on a regular basis. In addition,
> he reported to the consultative examiners that he does
> household chores, shops, and socializes with others. His
> medical records indicate that his hepatitis C is an issue,
> but does not create severe limitations and he has stopped
> taking the medication that had terrible side effects. His
> depression symptoms appear to be lessening with medication
> and therapy, and he seems to be doing well in treatment.

Id. at 101-02. This section is the majority of ALJ Borda's
explicit analysis of Plaintiff's capacity.

First, the facts the ALJ cites to support his conclusion do
not provide substantial evidence for Borda's conclusions;
participation in adult day care, socialization, and even daily

14

care for one's self, without more, are not sufficient facts to conclude an individual is capable of the medium work standard. If Plaintiff attended adult day care but sat down during the length of his stay, this evidence would support a far different conclusion than evidence showing he attended the day care and engaged in physical activities all day. Borda did not address the content of Plaintiff's participation. Likewise, that one socializes with others or cares for themselves is not alone evidence of physical capacity. Socialization can be both active and completely sedentary. Shopping can be time limited, interspersed throughout the day or week, or done by limiting exertion. These facts alone were therefore insufficient to provide a basis to disregard Plaintiff's testimony as to his fatigue. While The ALJ need not ""explicitly [ ] reconcile every conflicting shred of medical testimony," he must set forth the essential considerations with sufficient specificity to allow the district court to determine the decision was supported by substantial evidence. Mongeur, 722 F.2d at 1040 (2d Cir. 1983) (citing Miles v. Harris, 645 F.2d 122, 124 (2d Cir. 1981)). The ALJ failed to do so.

Second, Borda did not analyze with sufficient specificity whether the effects of fatigue resulting from Plaintiff's liver condition impacted Plaintiff's residual functional capacity. The

15

ALJ's opinion addresses this issue in two paragraphs: one
summarizing Plaintiff's history and considering Dr. Patel's
assessment on March 5, 2013, and a second according "great
weight" to the opinion of Dr. Revan that "claimant has only mild
limitations with walking due to fatigue and a limitation with
standing due to headaches." Tr. at 100.


"Medium work involves lifting no more than 50 pounds at a
time with frequent lifting or carrying of objects weighing up to
25 pounds. If someone can do medium work, we determine that he
or she can also do sedentary and light work." 20 C.F.R. §
404.1567(c). The difference between medium and light work, which
can require "a good deal of walking or standing" or "sitting
most of the time with some pushing and pulling of arm or leg
controls," id. at § 404.1567(b), is the lifting requirement.
Borda did not analyze or at all expound on whether, how, or why
the limitations noted by Revan would nevertheless render him
capable of medium-work, or incapable of more strenuous work.
Borda does not expound on whether Plaintiff's fatigue required a
physical limitation or did not interfere with the tasks of
medium work. The ALJ's conclusion relies on Dr. Revan's
assessment; however, Dr. Revan acknowledged (as did the ALJ)
that Plaintiff's fatigue resulted in some physical limitation.
Those accepted limitations must be set forth with sufficient

16

specificity to determine whether they are supported by
substantial evidence, not determined in a conclusory fashion
without discussion. The ALJ's conclusions are therefore
"[un]supported by substantial evidence such that additional
analysis would be unnecessary or superfluous." McIntyre v.
Colvin, 758 F.3d 146, 150 (2d Cir. 2014).

The Commissioner's argument reiterates the inadequate logic
that fatigue-based limitations did not preclude medium work as
evidence by a lack of limitations in speech, vision, hearing,
use of upper extremities, sitting, lying down, personal
grooming, or activities of daily living. Def.'s Mem. of Law in
Supp. Judg. on the Pleadings ("Def.'s Br.") at 26. While the
decision as to whether Plaintiff is precluded or capable of
particular work is reserved to the ALJ, the functional
limitations must be directly addressed. Failure to expressly
consider all the effects of Plaintiff's fatigue on Plaintiff's
ability to work renders the analysis incomplete, and the case
must be remanded for further proceedings. See Uncapher v.
Colvin, No. 02:13-CV-00886, 2014 WL 1316132, at *8 (W.D. Pa.
Apr. 1, 2014).

Borda concluded that Plaintiff was not capable of his
previous work, and asked the vocational expert to assess an

17

individual capable of medium work and walking for six hours. Tr. 131. Whether Plaintiff is capable of this hypothetical given the fatigue found by the ALJ, must be addressed. "On remand, the ALJ must specifically address the effects of Plaintiff's fatigue on his ability to work. If necessary (i.e., if it is determined that Plaintiff's complaints of fatigue are credible), the ALJ must then accommodate fatigue-related limitations in her RFC assessment and pose a new hypothetical question to a vocational expert." Id.

## V.   Conclusion

Based on the conclusions set forth above, the Commissioner's
motion is denied, the Plaintiff's cross-motion is granted, and
the case is remanded to the Social Security Agency for factual
determination consistent with this Opinion.

It is so ordered.

**New York, NY**
**July 5, 2016**

ROBERT W. SWEET
U.S.D.J.

19